Filed 6/24/16  P. v. Martinez CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>RICKY MARTINEZ,<br><br>    Defendant and Appellant. | H041273<br>(Santa Clara County<br> Super. Ct. No. C1114225) |

**STATEMENT OF THE CASE**

An information charged defendant Ricky Martinez with one count of oral copulation or sexual penetration with a child 10 years of age or younger (Pen. Code, § 288.7, subd. (b); count 1) and two counts of lewd or lascivious conduct on a child under the age of 14 by force, violence, duress, menace, or fear (Pen. § 288, subd. (b)(1); count 2 and count 3.)  A jury convicted defendant on counts 1 and 2 and acquitted him on count 3.  The trial court sentenced defendant to a prison term of 15 years to life consecutive to six years.

Defendant now appeals from the judgment of conviction.  Defendant makes four arguments in favor of reversal:  1) the trial court erred in admitting opinion testimony regarding his guilt and the victim's credibility; 2) the trial court erred in failing to give a limiting instruction pertaining to that opinion testimony; 3) defense counsel rendered ineffective assistance in failing to ensure that the trial court gave a limiting instruction

regarding the opinion testimony; and 4) cumulative error warrants reversal.  As set forth below, we affirm.

<h2 style="text-align:center">STATEMENT OF THE FACTS</h2>

The victim named in the information was Cessaria Doe.[1]  Defendant is a cousin of Cessaria's father, and Cessaria has known defendant her whole life.  Cessaria's mother frequently left Cessaria in defendant's care while she went out.

Cessaria was 14 years old at the time of trial, and defendant was 45 years old at the time of trial.  Cessaria testified regarding two separate incidents that occurred when she was 10 years old.

### The First Incident:  Counts 1 and 2

Cessaria testified that she was at defendant's San Jose home, and defendant told her to go into a bedroom, place a phone call to her mother, and ask her mother "where she was at."  Cessaria went into the bedroom and used a "[h]ouse phone" with a cord to call her mother.  Cessaria's mother did not answer.

There was a television in the bedroom, and defendant put on a video of a couple having sex on a plane.  Defendant closed the bedroom door, and he placed a knife in the doorjamb to keep the door closed.  Defendant sat Cessaria on his lap, and he rubbed her vagina.  Cessaria tried to push away from defendant.  Defendant rolled Cessaria onto the bed, and he pulled down her skirt and underwear.  Defendant touched Cessaria's vagina with his hand, and he licked her vagina.  Cessaria tried to push defendant away and get up, but defendant had his hand on her stomach and was holding her down.  Cessaria told defendant that she needed to use the restroom, but defendant would not let her get up.  Defendant touched and licked Cessaria's vagina "for a while."  Defendant stopped when

---

[1]  At trial, several of the witnesses were identified by the last name Doe.  In order to avoid confusion, this opinion will refer to witnesses by their first names.

someone walked through the home's front door. Cessaria ran out of the bedroom and went into the bathroom.

Later that day, defendant asked Cessaria if she was mad at him. Defendant told Cessaria not to tell anyone what had happened.

## The Second Incident: Count 3

Cessaria testified that defendant touched her again when he moved to a new apartment in San Jose. Cessaria testified that she and defendant's children were sleeping in a room at the apartment, and she woke up and discovered that defendant was rubbing her lower back. Defendant told Cessaria to be quiet. Defendant was rubbing Cessaria's back near her pants, and Cessaria testified that it felt like defendant was trying to take her pants off. Cessaria stood up, pulled her shirt down, and ran out of the room to her mother.

## Cessaria Discloses to her Parents and a Friend

Cessaria did not immediately tell anyone that defendant had touched her. Cessaria testified that the secret was "bothering" her as she "got older," and she eventually told her mother. Cessaria's mother, Lydia, testified that one day Cessaria appeared to be "feeling down," and Cessaria said that defendant "used to touch" her. Lydia testified that Cessaria said the touching occurred on more than one occasion. Lydia became "very upset" when Cessaria told her about the touching, so Lydia did not ask about the "specifics" of the touching. Lydia told Cessaria not to tell anyone about the touching because Lydia feared that Cessaria could be taken away from her.

Sometime after she told her mother, Cessaria told her friend, Alyssa, what defendant had done. Alyssa testified that one day Cessaria "seemed bothered," and Cessaria said she was "raped" by her uncle.

After she told Alyssa and a "couple months" after she told her mother, Cessaria told her father, Cesar, that defendant had touched her. Cesar testified that Cessaria

3

started to tell him the details of the touching, but he stopped her because he "didn't want to hear the details." Cesar called the police immediately after Cessaria told him about the touching.

Police interviewed Cessaria, and she described the two incidents in which defendant touched her. In an interview, in contrast to her trial testimony, Cessaria said that the second incident occurred during a party at the home of defendant's sister.

*Evidence of Past Sexual Offenses*

Veronica Doe is defendant's cousin and Cessaria's aunt. Veronica was 35 years old at the time of trial.

Veronica testified that defendant "touched" her when she was a child. She remembered two occasions on which defendant touched her. Veronica testified that when she was about 10 years old, defendant made her "touch his penis" and "jack him off" until he ejaculated. Veronica testified that when she was "a little older" and "barely growing" breasts, defendant touched her right breast.

Veronica testified that she learned of Cessaria's molestation when she overheard her mother speaking on the telephone. Veronica testified that she immediately thought, "It's true because he did it to me." She also thought, "I know he's capable of this."

After she learned about Cessaria's allegation against defendant, Veronica informed police that defendant had molested her as a child. Veronica testified that if Cessaria "had not come forward," she would have kept her own molestation a "secret to the grave."

*Child Sexual Abuse Accommodation Syndrome*

An expert witness testified regarding Child Sexual Abuse Accommodation Syndrome (CSAAS). The expert explained that CSAAS is a term that describes "patterns of behavior" in sexually-abused children that are "very counter-intuitive to what adults would often expect from children who had experienced that kind of situation." Children

4

who have been sexually abused often delay in reporting the abuse, and many sexually-abused children keep the abuse a "secret into adulthood." When sexually-abused children do report the abuse, they frequently disclose in an "unconvincing" fashion. Sexually-abused children often disclose the abuse "in small bits and pieces," do not "tell the whole thing all at once," do not "include all of the details" when they report the abuse, and provide "details" of the abuse that "differ across interviews."

## *Defense Evidence*

Defendant testified on his own behalf. He denied molesting Cessaria, and he denied molesting Veronica. He testified that Cessaria "made it up" when she accused him of molesting her.

Defendant called many family members to impeach some of the details of Cessaria's testimony. Cessaria testified that she "probably" told police that defendant was wearing sweatpants during the first incident, but several of defendant's family members testified that defendant always wore jeans and never wore sweatpants. Defendant's family members testified that they had never seen any pornographic videos at defendant's home. Defendant's family members testified that there was never a landline telephone with a cord in a bedroom at defendant's home.

Defendant also presented evidence to impeach Veronica's testimony. Defendant's mother, Mary, testified that she saw Veronica at the hospital three months before the trial, Veronica hugged and kissed her, and Veronica said she had "made a mistake" and "couldn't take it back." Mary testified that she saw Veronica again two weeks later, and Veronica said it was her uncle, not defendant, who had molested her. Veronica denied telling Mary that it was her uncle who had molested her, and she denied telling Mary that she had made a mistake.

Defendant's sister, Maria, described Veronica's allegations against defendant as "lies." Maria and Veronica "used to hang out together," Maria knew "all" of Veronica's

5

secrets, Veronica never told Maria that defendant had molested her, and Veronica would have told Maria if defendant had molested her.

Defendant's niece, Esmerelda, was 16 years old at the time of trial, and she testified that she lived with defendant when she was six or seven years old. She testified that defendant never touched her inappropriately and never made her feel uncomfortable. Another niece of defendant, Maribel, was 16 years old at the time of trial, and she testified that she stayed with defendant for "days at a time" when she was eight or nine years old. She testified that defendant never touched her in any inappropriate places and never made her feel uncomfortable.

## DISCUSSION

All of defendant's arguments on appeal pertain to Veronica's testimony that defendant was "capable of this" and Veronica's testimony that Cessaria's allegation against defendant was "true." Defendant makes the following arguments regarding that testimony: the trial court erred in admitting the testimony because it constituted improper opinion regarding his guilt and the victim's credibility; the trial court erred in failing to give a limiting instruction specifying that the testimony could not be used to determine that he was guilty of the charged crimes; counsel rendered ineffective assistance in failing to ensure that the trial court gave a limiting instruction regarding the testimony; and the cumulative effect of the claimed errors warrants reversal.

### *Background*

The defense filed a motion in limine seeking exclusion of opinion testimony regarding defendant's guilt. At a hearing on the motion, defense counsel expressed concern that Veronica might testify that she believed defendant to be guilty and that she believed Cessaria to be telling the truth: "My concern is Veronica because she tells officers when she says, oh, well, I know he did it because he did it to me, I want to make sure that she's carefully instructed that she can't say that. She can say this is what

6

happened to me but not that I know he did it to [Cessaria] or I know [Cessaria is] telling the truth because he did it to me. And that's my concern." The trial court responded to defense counsel's argument: "I guess the witness's perspective of whether [defendant] did this incident is probably irrelevant." The trial court then invited the prosecutor to respond to defense counsel's argument.

The prosecutor argued that Veronica's opinion was relevant to show her state of mind when she disclosed to police that she had been molested by defendant. The prosecutor explained that Veronica learned of Cessaria's allegation against defendant when Veronica overheard a telephone conversation, and Veronica immediately thought Cessaria was "telling the truth" because "this happened to me too." The prosecutor asserted that Veronica's "thought process" when she overheard the telephone conversation explained "why she ultimately decide[d] to come forward and give a statement to the police, . . . which is part of what [Evidence Code section] 1108 is."

The trial court noted that Veronica's "state of mind can be relevant for why she disclosed." The trial court then ruled on the defense motion as follows: "So I guess to the extent she's explaining her subsequent actions I believe it—and I felt I needed to disclose because of what happened to me, it can come in for that limited purpose. But certainly [she] shouldn't be testifying—and I will give any instruction to the jury, and I guess you know to the extent you're speaking to your witnesses ahead of time, certainly they cannot—I mean, you should admonish them they can't speak to issues of guilty. I agree that is for the jury to decide. So I guess granted with modification. [¶] I mean, there is going to be some limited purpose if it goes to showing her subsequent actions, her reasons for—that witness's reasons for revealing were because she overheard this and thought—that's why she disclosed. That evidence is going to come in. But everything else you described I think is an accurate statement of the law. People cannot testify as to the guilt or innocence of the defendant."

7

During the direct examination of Veronica, the prosecutor asked: "So, Veronica, I'd like to ask you when you—when did you first find out about Cessaria's molestation?" Veronica responded to the question as follows: "I went to visit my mom, and, umm, she was on the phone. And I kind of overheard the conversation, and we were in the backyard. [¶] And I followed her because I was like what is she talking about. And, umm, I heard Cessaria's name and the lawyer—I don't know. I guess the lawyer or somebody was talking to my mom, investigator. And I was all 'It's true because he did it to me.' I just overheard my mom, and then I go 'Mom, what's going on? What's going on?' And then she was telling me what happened."

Following Veronica's response, the prosecutor asked Veronica if "that was really the first time" that she had heard about Cessaria's "allegation against" defendant, and Veronica responded, "Yes." The prosecutor then asked Veronica, "And your instant reaction was 'I know he's capable of this'?" Veronica responded, "Yes. I didn't think— I didn't think he would do that again."

Defense counsel did not object to Veronica's testimony. Nor did defense counsel request a limiting instruction pertaining to Veronica's testimony. The trial court never gave a limiting instruction regarding Veronica's testimony.

***The Trial Court's Admission of the Testimony and Failure to Give a Limiting Instruction***

We begin our analysis by addressing defendant's claims that the trial court erred in admitting Veronica's testimony and erred in failing to give a limiting instruction pertaining to Veronica's testimony.

"A consistent line of authority in California as well as other jurisdictions holds a witness cannot express an opinion concerning the guilt or innocence of the defendant." (*People v. Torres* (1995) 33 Cal.App.4th 37, 46.) "[O]pinions on guilt or innocence are inadmissible because they are of no assistance to the trier of fact." (*Id.* at p. 47.)

8

Similarly, "a lay witness may not express an opinion about the veracity of another person's statement." (*People v. Houston* (2012) 54 Cal.4th 1186, 1221.)

We review the trial court's admission of evidence for abuse of discretion. (*People v. Cowan* (2010) 50 Cal.4th 401, 462; *People v. Brown* (2003) 31 Cal.4th 518, 534.) "[A]ssertions of instructional error are reviewed de novo." (*People v. Shaw* (2002) 97 Cal.App.4th 833, 838.)

Here, during motions in limine, the trial court ruled that Veronica's testimony regarding her "state of mind" when she learned of Cessaria's allegation could be admitted for the "limited purpose" of explaining why Veronica disclosed her own molestation. The trial court further ruled that "[p]eople cannot testify as to the guilt or innocence of the defendant," and it explained that it would "give any instruction to the jury" in connection with Veronica's testimony.

The trial court, however, did not abide by its own ruling. During her testimony, Veronica provided an opinion regarding defendant's guilt and the credibility of Cessaria's allegation when she testified that Cessaria's allegation was "true" and testified that defendant was "capable of this." The trial court did not strike any of Veronica's opinion testimony. The trial court did not give a limiting instruction pertaining to Veronica's opinion testimony. The jury was thus free to consider Veronica's opinion testimony for unlimited purposes, including the issue of defendant's guilt of the charged crimes. The trial court erred in admitting Veronica's opinion testimony and in failing to give a limiting instruction pertaining to Veronica's opinion testimony.

The issue is whether defendant suffered prejudice. Defendant contends that the trial court's admission of Veronica's opinion testimony and failure to give a limiting instruction should be reviewed under the prejudice standard for federal constitutional error articulated in *People v. Chapman* (1967) 386 U.S. 18 (*Chapman*). The Attorney General asserts that we should apply the prejudice standard for state law error articulated

9

in *People v. Watson* (1956) 46 Cal.2d 818.  We need not determine which of the two standards applies here.  Even under the more stringent *Chapman* standard, defendant did not suffer prejudice necessitating reversal.

Under the *Chapman* standard, error requires reversal "unless it can be shown 'beyond a reasonable doubt' that the error did not contribute to the jury's verdict." (*People v. Sengpadychith* (2001) 26 Cal.4th 316, 324, citing *Chapman, supra,* 386 U.S. at p. 24.)  " 'To say that an error did not contribute to the ensuing verdict is . . . to find that error unimportant in relation to everything else the jury considered on the issue in question, as revealed in the record.'  [Citation.]  Thus, the focus is what the jury actually decided and whether the error might have tainted its decision.  That is to say, the issue is 'whether the . . . verdict actually rendered in this trial was surely unattributable to the error.'  [Citation.]"  (*People v. Neal* (2003) 31 Cal.4th 63, 86, italics omitted.)  As explained below, the verdict here surely was not attributable to the admission of Veronica's opinion testimony without a limiting instruction.  Several reasons support this conclusion.

First, Veronica's opinion testimony revealed very little information pertaining to defendant's guilt and Cessaria's credibility.  Veronica provided her opinion testimony in connection with a telephone conversation that she overheard, but she did not describe the substance of that conversation—she testified only that she "overheard the conversation" and "heard Cessaria's name."  Veronica testified that when she overheard the telephone conversation, "I was all 'It's true because he did it to me.' "  She also testified that, upon hearing the telephone conversation, her reaction was "I know he's capable of this." Given that Veronica never described what she overheard in the telephone conversation, it was unknown what Veronica believed to be "true," and it was unclear what she believed defendant was "capable" of doing.  Because Veronica's opinion testimony revealed so little, we do not believe that her opinion testimony tainted the verdict.

10

Second, although defendant characterizes Veronica's opinion testimony as "a crucial, critical, highly significant factor in the trial," we do not believe that her opinion testimony can be characterized in such a fashion. Veronica's opinion constituted a very brief portion of her testimony, and her opinion testimony was just a fraction of the evidence presented by the prosecution. Indeed, Veronica's opinion testimony was of such little significance that the prosecutor did not mention it during closing argument. Moreover, the defense presented evidence that impeached Veronica's veracity. Defendant's sister, who knew "all" of Veronica's secrets, described Veronica's testimony against defendant as "lies." Defendant's mother's testimony suggested that Veronica's testimony against defendant was false. Given the brevity of Veronica's opinion testimony and the evidence impeaching Veronica's veracity, Veronica's opinion testimony was of little import.

Finally, the circumstance that the jury acquitted defendant on count 3 shows that the guilty verdicts on counts 1 and 2 were not attributable to Veronica's opinion testimony. If Veronica's opinion testimony were as powerful as defendant claims it was, it would have swayed the jury to convict on count 3. We thus must conclude that Veronica's opinion testimony did not improperly influence the jury. The circumstance that the jury acquitted defendant on count 3 logically demonstrates that the jury's guilty verdicts on counts 1 and 2 were not a product of Veronica's opinion testimony.

In sum, for the foregoing reasons, we are satisfied beyond a reasonable doubt that the admission of Veronica's opinion testimony without a limiting instruction did not contribute to the jury's verdict. Defendant therefore did not suffer prejudice under the *Chapman* standard, and the trial court's error in admitting the opinion testimony and in failing to give a limiting instruction is not grounds for reversal.

11

*Ineffective Assistance of Counsel*

Defendant contends that defense counsel rendered ineffective assistance in failing to ensure that the trial court gave a limiting instruction pertaining to Veronica's opinion testimony. Specifically, defendant asserts that defense counsel should have requested a limiting instruction specifying that the jury could not consider Veronica's opinion testimony "to determine that [defendant] was guilty." As explained below, defendant cannot establish ineffective assistance of counsel.

The defendant bears the burden of proving ineffective assistance of counsel. (*People v. Carter* (2003) 30 Cal.4th 1166, 1211.) "To prevail on an ineffective assistance of counsel claim, appellant must prove two elements: (1) trial counsel's deficient performance and (2) prejudice as a result of that performance." (*People v. Martinez* (2014) 226 Cal.App.4th 1169, 1189, citing *Strickland v. Washington* (1984) 466 U.S. 668, 687 (*Strickland*).)

Prejudice is established if "there is a reasonable probability that defendant would have obtained a more favorable result absent counsel's shortcomings." (*People v. Cunningham* (2001) 25 Cal.4th 926, 1003 (*Cunningham*).) "A reasonable probability is a probability sufficient to undermine confidence in the outcome." (*Strickland, supra,* 466 U.S. at p. 694.)

"The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." (*Strickland, supra,* 466 U.S. at p. 697.)

Defendant cannot establish the requisite prejudice for his ineffective assistance of counsel claim. As we explained above, we are satisfied beyond a reasonable doubt that the admission of Veronica's opinion testimony without a limiting instruction did not contribute to the jury's verdict. As we explained, the jury's verdict surely was not

attributable to the admission of Veronica's opinion testimony without a limiting instruction. There thus is not a reasonable probability that defendant would have obtained a more favorable result if defense counsel had procured a limiting instruction pertaining to Veronica's opinion testimony. Because defendant cannot show prejudice, his claim of ineffective assistance fails.

*Cumulative Error*

Defendant finally contends that the cumulative effect of the alleged errors warrants reversal. This claim also fails.

In assessing a claim of cumulative error, the critical question is "whether defendant received due process and a fair trial." (*People v. Kronemyer* (1987) 189 Cal.App.3d 314, 349, overruled on another point in People v. Whitmer (2014) 59 Cal.4th 733, 742.) Here, we have found no substantial error that could have affected the jury's verdict. (See *People v. Butler* (2009) 46 Cal.4th 847, 885 [claim of cumulative error failed where reviewing court "found no substantial error in any respect"].) "Defendant was entitled to a fair trial but not a perfect one." (*Cunningham, supra,* 25 Cal.4th at p. 1009.) We are satisfied that defendant received due process and a fair trial, and his claim of cumulative error fails.

## DISPOSITION

The judgment is affirmed.

13

                                          _____

                                                        RUSHING, P.J.

WE CONCUR:

_____

                    PREMO, J.

_____

                    MÁRQUEZ, J.